RECEIVED
IN LAFAYETTE, LA.
JUN 2 4 2011
TONY R. MOORE, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| ROSELYN PENNIER, ET AL. | CIVIL ACTION NO. 10-1111 |
| VERSUS | JUDGE DOHERTY |
| MORTON INT'L, INC., ET AL. | MAGISTRATE JUDGE HANNA |

## MEMORANDUM RULING

Pending before this Court is a Report and Recommendation issued by the magistrate judge, in which the magistrate judge recommends the Motion to Remand [Doc. 12] filed by plaintiffs Roselyn Pennier, Enjoli Monet Marie Pennier, Jamal Carl James Pennier, and Rogerio Christopher J Pennier be denied, and summary judgment be entered *sua sponte* in favor of defendants Daniel A. Schmit and Henry L. Charpentier and against plaintiffs, dismissing plaintiffs' claims against Mr. Schmit and Mr. Charpentier. The magistrate judge further recommends plaintiffs' Motion for Leave to File an Amended Complaint [Doc. 30] be denied.

Plaintiffs have filed an Objection [Doc. 38] to the Report and Recommendation, and defendants have filed a Response [Doc. 39] to the Objection. After this Court's *de novo* review of the issues presented, this Court concludes the Objections of the plaintiffs have merit. Therefore, this Court declines, in part,[1] to accept the recommendation of the magistrate judge, finding defendant Daniel Schmit was not improperly joined. Because Mr. Schmit's presence in the instant lawsuit

---

[1] Defendants argue the record is "virtually devoid of references to [Mr.] Charpentier and the Plaintiffs ultimately decided not to depose him." However, for the reasons stated herein, this Court need not consider whether the allegations of intentional conduct on the part of Mr. Charpentier are sufficiently alleged, because this Court concludes the allegations are sufficiently alleged against Mr. Schmit, and the presence of Mr. Schmit, a Louisiana citizen, destroys diversity. Therefore, except where otherwise noted, this Court's references to the sufficiency of the allegations herein relate to the sufficiency of the allegations against Mr. Schmit.

defeats complete diversity, this Court lacks subject matter jurisdiction over the instant case, and the Motion to Remand is, therefore, GRANTED. The Clerk of Court shall remand the instant lawsuit to the 16th Judicial District Court for the Parish of Iberia, Louisiana.[2]

I.     **Standard of Review**

Pursuant to 28 U.S.C. § 636(b)(1), "[a] judge of the court shall make a *de novo* determination of those portions of the [magistrate judge's] report [and recommendation] or specified proposed findings or recommendations to which objection is made." Section 636(b)(1) further states "[a] judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions."

The magistrate judge concluded there is no reasonable basis to predict the plaintiffs might be able to recover against Mr. Schmit and Mr. Charpentier, therefore, the magistrate judge concluded these defendants were improperly joined. Accordingly, the magistrate judge recommends *sua sponte* summary dismissal of plaintiffs' claims against these defendants. Because complete diversity would exist without the presence of Mr. Schmit and Mr. Charpentier, the magistrate judge recommends plaintiffs' motion to remand be denied.

Plaintiffs have objected to the magistrate judge's ultimate findings that Mr. Schmit and Mr. Charpentier were improperly joined; that the motion to remand should be denied; that the allegations in plaintiffs' complaint are insufficient to allege intentional acts against Mr. Schmit and Mr. Charpentier; and that summary judgment be granted *sua sponte* dismissing Mr. Schmit and Mr.

---

[2] As this Court lacks subject matter jurisdiction over the instant case, this Court declines to rule on plaintiffs' Motion for Leave to File an Amended Complaint [Doc. 30].

Charpentier. Considering the foregoing, this Court will examine the entirety of the motion to remand de novo. *See Hernandez v. Estelle*, 711 F.2d 619, 620 (5th Cir. 1983).

## II.  Legal Analysis

The issue before the Court is whether defendants Daniel A. Schmit and Henry L. Charpentier were properly joined so as to destroy this Court's subject matter jurisdiction and thus, warrant remand. "Fraudulent [or improper] joinder can be established in two ways: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir.2003). Defendants do not dispute that Messrs. Schmit and Charpentier are Louisiana citizens. Therefore, this Court's inquiry turns on the second test. In order to show joinder was improper under this test, defendants must demonstrate "there is no possibility of recovery by the plaintiff against [the] in-state defendant[s]." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir.2004). This Court notes the burden of persuasion on those claiming fraudulent joinder is a heavy one. *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 462, *citing Travis v. Irby*, 326 F.3d 644, 648 (5th Cir. 2003).

The Fifth Circuit has defined the fraudulent joinder standard in various ways. As explained by the court in Ross:

> Recent opinions, however, have clarified [the] standard. "Any argument that a gap exists between the 'no possibility' and 'reasonable basis' of recovery language was recently narrowed, if not closed." The court must determine whether there is arguably a reasonable basis for predicting that state law might impose liability. <u>This means that there must be a reasonable possibility of recovery, not merely a theoretical one.</u>

344 F.3d at 462 (emphasis added) (internal citations omitted).

The Fifth Circuit has stated in conducting an inquiry as to whether a plaintiff has a reasonable

3

basis of recovery under state law, the court may utilize one of two procedures, as follows:

> The court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder. That said, there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry.
>
> While the decision regarding the procedure necessary in a given case must lie within the discretion of the trial court, we caution that a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant. In this inquiry the motive or purpose of the joinder of in-state defendants is not relevant. We emphasize that any piercing of the pleadings should not entail substantial hearings. Discovery by the parties should not be allowed except on a tight judicial tether, sharply tailored to the question at hand, and only after a showing of its necessity. Attempting to proceed beyond this summary process carries a heavy risk of moving the court beyond jurisdiction and into a resolution of the merits, as distinguished from an analysis of the court's diversity jurisdiction by a simple and quick exposure of the chances of the claim against the in-state defendant alleged to be improperly joined. Indeed, the inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden.[3]

*Smallwood*, 385 F.3d at 574.

Thus, "[s]ince the purpose of the improper joinder inquiry is to determine whether or not the in-state defendant was properly joined, the focus of the [summary] inquiry must be on the joinder, not the merits of the plaintiff's case." *Id.* Accepting all well-pleaded facts as true and in favor of plaintiff, if the defendant can show there is *no reasonable basis* for the district court to predict the plaintiff might be able to recover against the in-state defendant, then joinder is improper. *Travis,*

---

[3] In the instant case, although initially indicating he believed the plaintiff had met the standard under Rule 12(b)(6) to sufficiently state their claim under the intentional tort exception, the magistrate judge nevertheless conducted a limited summary inquiry for the purpose of identifying the presence of discrete and undisputed facts that would preclude plaintiffs' recovery against Mr. Schmit and Mr. Charpentier. Because no party has objected to the procedure followed by the magistrate judge in making his findings, this Court does not consider the propriety of the procedure employed by the magistrate judge in this regard.

326 F.3d at 648 (emphasis added).

Under Louisiana law, generally, the sole remedy that an employee injured on the job has against his employer is the receipt of benefits under the Louisiana Workers' Compensation Act. *See* La. R.S. §23:1032. However, the exclusive remedy provision contained in §1032 includes a narrow exception for intentional acts committed by the employer. *Id.* at §1032(B). For a plaintiff to recover under the theory of intentional tort, he must establish the person responsible for his injuries either (1) desired to bring about the physical consequences of his act, or (2) was substantially certain that they would follow from his actions. *Bazley v. Tortorich*, 397 So.2d 475 (La.1981). It is well-settled intent is crucial in determining liability under either prong of the test, and intent is not limited to consequences which are desired.

There is no evidence in this case that either Mr. Schmit or Mr. Charpentier desired to bring about the death of Mr. Pennier, and, indeed, the plaintiffs do not so allege. Therefore, this Court's inquiry turns on the second factor. Louisiana courts have interpreted the term "substantially certain" to mean "nearly inevitable," "virtually sure," and "incapable of failing." *Hardy v. Ducote*, 246 F.Supp.2d 509, 514 (W.D. La. 2003) (J. Little). Thus, "reckless or wanton conduct, gross negligence, disregard of OSHA safety regulations, the failure to use safety equipment, or the failure to correct unsafe working conditions by an employer does not amount to intentional wrongdoing." *Hardy*, 246 F.Supp.2d at 515. In fact, Louisiana courts narrowly construe the intentional act exception and have almost universally held employers and co-employees are not liable under the intentional act exception for violations of safety standards or for failing to provide safety equipment. *Reeves v. Structural Preservation Systems*, 731 So.2d 208, 211-12 (La.1999), *citing Jasmin v. HNV Central Riverfront Corp.*, 94-1497 (La. App. 4th Cir.), 642 So.2d 311, *writ denied*, 647 So.2d 1110

(La. 1994) (failure to provide safe working environment in grain storage bin); *Leger v. Hardy Rice Drier, Inc.,* 640 So.2d 650 (La. App. 3rd Cir. 1994 ) (maintaining forklift in unsafe condition); *Williams v. Gervais F. Favrot Co., Inc.,* 573 So.2d 533 (La. App. 4th Cir.), *writ denied,* 576 So.2d 49 (La. 1991) (violations of OSHA and other accepted industry safety standards); *Dycus v. Martin Marietta Corp.,* 568 So.2d 592 (La. App. 4th Cir.), *writ denied,* 571 So.2d 649 (La.1990) (allowing worker to operate dangerous equipment); *Holliday v. B.E. & K. Const. Co.,* 563 So.2d 1333 (La. App. 3rd Cir.1990) (knowledge that machine is dangerous and that its use creates a high probability that someone will eventually be injured from such use); *Davis v. Southern Louisiana Insulations,* 539 So.2d 922 (La. App. 4th Cir.1989) (failure to provide ladders and scaffolding); *Hood v. South Louisiana Medical Center,* 517 So.2d 469 (La. App. 1st Cir.1987) (failure to maintain safe working conditions); *Taylor v. Metropolitan Erection Co.,* 496 So.2d 1184 (La. App. 5th Cir.), *writ denied,* 497 So.2d 1388 (La.1986) (failure to provide scaffold worker with safety belt); *Snow v. Gulf States Utilities Co.,* 492 So.2d 31 (La. App. 1st Cir.), *writ denied,* 496 So.2d 349, 356 (La.1986) (allowing worker to work too closely to energized wires); *Jacobsen v. Southeast Distributors, Inc.,* 413 So.2d 995 (La. App. 4th Cir.), *writ denied,* 415 So.2d 953 (La.1982) (failure to provide specifically requested safety equipment); *Cortez v. Hooker Chemical and Plastics Corp.,* 402 So.2d 249 (La. App. 4th Cir.1981) (deficiently designed machinery and disregard of OSHA standards); *Erwin v. Excello Corp.,* 387 So.2d 1288 (La. App. 1st Cir.1980), *writs denied,* 396 So.2d 1242 and 397 So.2d 1363 (La.1981).

Notwithstanding the narrowness with which Louisiana courts have construed the intentional act exception, it is not impossible to successfully plead an intentional act. For instance, in *Hare v. Ganaway Construction Co.*, 536 So.2d 722 (La. App. 3rd Cir. 1988), *writ denied*, 539 So.2d 633 (La.

1989), plaintiff sued his employer after he was injured in the course and scope of his employment when he fell from a defective ladder. The ladder was bent, missing a rung, and had badly worn skid pads. *Id.* at 723. The plaintiff alleged his employer knew or believed plaintiff's injuries were substantially certain to result when he ordered plaintiff, under compulsion of job loss, to use the obviously defective ladder. The trial court granted defendant's motion for summary judgment, concluding there were no genuine issues of material fact as to whether the defendants knew the use of the ladder would occasion the accident and injury was a result substantially certain to follow. However, the appellate court reversed on appeal, concluding it was unable to conclude there was *no* genuine issue of fact as to whether the company's employees ordered plaintiff to use the ladder in question, and, more importantly (this Court would suggest), whether the condition of the ladder was such that the defendant would know with substantial certainty that use by the plaintiff would result in an accident. *Id.* at 725. The court concluded the first issue presented a credibility question which was not appropriate for decision on a motion for summary judgment. *Id. See also Trahan v. Trans-Louisiana Gas Co.*, 618 So.2d 30 (La. App. 3rd Cir. 1993) (employer committed intentional act by repeatedly exposing employee to the chemical mercaptan where employee had become ill on two prior occasions after exposure to mercaptan); *Wainwright v. Moreno's, Inc.*, 602 So.2d 734 (La. App. 3rd Cir. 1992) (employer committed intentional act by ordering employee to work in a ditch that had caved in the previous day and which looked as though it would cave in again).

In *Wainwright v. Moreno's, Inc.*, 602 So.2d 734 (La. App. 3rd Cir. 1992), the plaintiff sued his employer and foreman after he was injured when a ditch he had been ordered to work in caved in. The matter went to trial on the issue of the intentional torts after the trial court denied defendants' motion for summary judgment. The trial judge concluded the employer and foreman

were liable under the intentional tort exception to the workers compensation law, and on appeal, the appellate court affirmed. The appellate court noted the trial judge made a record of the evidence upon which he relied in finding the defendants liable, including testimony that a cave-in had occurred on the day before the accident; testimony that the supervisor had been told the dirt in the cave in which they were digging was unstable and no one should be allowed in the ditch until workers protected the ditch against a cave-in; and evidence that the company was running behind schedule and was attempting to speed up their work. *Id.* at 739.

This Court also notes it is well-settled "when an employee seeks to recover from his employer for an intentional tort, a court must apply the legal precepts of general tort law related to the particular intentional tort alleged in order to determine whether he has proved his cause of action and damages recoverable thereunder." 731 So.2d at 211 n.2, *citing Caudle v. Betts*, 512 So.2d 389, 391 (La.1987). Noted the court in *Reeves*:

> In *Caudle*, as a practical joke, the CEO shocked the back of the plaintiff's neck with an electric automobile condenser, and chased him around with it until he escaped by locking himself in an office. The plaintiff suffered injury to his occipital nerve. *Because plaintiff had proved the elements of the intentional tort of battery, which requires only that the person engage in "a harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact," we held this to be an intentional act within the meaning of the intentional act exception, even though the CEO intended only to inflict offensive contact, not actual injury.* See also *White v. Monsanto Co.*, 585 So.2d 1205 (La.1991) (reversing a jury finding that the employer had committed the intentional tort of the intentional infliction of emotional distress and that the employee could therefore recover under the intentional act exception).

*Id.* (emphasis added)

In the instant case, this Court concludes many of the allegations contained in plaintiffs' complaint would not, as a matter of law, be sufficient to allow a possible recovery by the plaintiffs

8

against Mr. Schmit. For instance, this Court agrees with the magistrate judge that the plaintiff's allegations that Mr. Schmit knew the ground support system was not properly designed, installed, and/or maintained, and that said failure would inevitably lead to severe injury or death; the failure to comply with standards, policies, and regulations that created a workplace substantially certain to cause severe injury or death; and ignoring the safety concerns of its employees who specifically requested proper ground control equipment are all allegations the Louisiana Supreme Court has concluded are *not* sufficient to trigger the intentional act exception. Thus, plaintiffs' argument in its briefing that Mr. Schmit's engaging in "intentionally refusing to comply with the law, intentionally refusing to comply [with] Morton Salt ground control policy, intentionally refusing to comply [with] the voiced safety concerns and fears of its miners, and not even having equipment necessary to securely bolt the mine" do not, in all likelihood, rise to the level of "substantial certainty" that an injury would occur, given this Court's understanding of the standard under Louisiana law.

However, in this case, the plaintiffs, in addition to alleging the foregoing, also allege *fraud* on the part of defendants, including Mr. Schmit. Under Louisiana law, fraud is defined as "a misrepresentation or suppression of the truth made *with the intention* either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." La. Civ. Code art.1953. Under Louisiana law, fraud *requires* a showing of intent. *See St. Paul Mercury Ins. Co. v. Williamson,* 224 F.3d 425 (5th Cir.2000); *Pellerin Const. Inc. v. Witco Corp.,* 169 F.Supp.2d 568 (E.D.La.2001).

This Court was unable to find any cases on point, that is, addressing the issue of whether a claim for fraud under Louisiana law satisfies the pleading requirement necessary to satisfy the

9

intentional acts exception, given that fraud *requires* a showing of intent. Nevertheless, the claims of fraud – if proven true – go beyond mere negligence, or even gross negligence. Indeed, in addition to arguing a failure to provide a safe place to work and a failure to comply with safety standards, plaintiffs allege allege Mr. Schmit "falsif[ied] record[s] to hide illegal bolting practices," and "fraudulently l[ied] to MSHA inspectors about bolting operations at the mine to avoid citation."[4] Specifically, the plaintiffs allege when MHSA would conduct routine inspections between June 20, 2009, roof bolters at Morton Salt would lie to MHSA inspectors by telling MHSA that Morton Salt roof bolters were checking the torque on the bolts with a torque wrench – the way Morton Salt employees were required by law to check the bolts – when they were not, in fact, checking the torque on the bolts. Additionally, plaintiffs allege Morton Salt employees were filing out bolt torque forms with every single bolt listed at 150 foot-pounds of torque without taking any actual torque measurements on the bolts. Thus, plaintiffs allege Morton Salt employees forged "every single report" to record a safe torque. Additionally, Morton Salt employee Lynel Wilson testified Mr. Schmit, the plant manager, "had to know" about the bolting practices not being in compliance with the law.[5] The MHSA found the cause of the 2009 accident that killed the plaintiff was the "failure of the bolting system," due to "poor installation methods." This Court notes it must construe the foregoing testimony as true in making the determination as to intentional acts.

While this Court acknowledges the jurisprudence in Louisiana interprets the failure of

---

[4] The Court notes the magistrate judge did not focus on the fact that plaintiffs allege fraud in the instant case; rather, the magistrate judge's approach was to determine whether, accepting all facts pled by the plaintiffs as true, plaintiffs could reasonably recover as a matter of law, concluding none of the facts as alleged *rise to the level* of an intentional act.

[5] *See* Deposition of Lynel Wilson, attached as Exhibit 1 to plaintiff's supplemental memorandum in support of remand, Doc. 34, at p. 26.

management to supply workers with proper safety tools is mere negligence, in light of the foregoing allegations of fraud – including the allegations of falsification of records and lying to MHSA investigators concerning roof bolting – this Court cannot say the defendants have shown there is *no reasonable basis* for a district court to predict the plaintiffs might be able to recover against Mr. Schmit in this case. Indeed, like the defendant in *Caudle v. Betts*, 512 So.2d 389, 391 (La.1987), wherein the CEO shocked the back of the plaintiff's neck with an electric automobile condenser and chased him around with it until he escaped by locking himself in an office, and the plaintiff ultimately suffered injury to his occipital nerve, this Court concludes fraud is sufficiently alleged as an intentional act within the meaning of the intentional act exception, even though Mr. Schmit – who allegedly knew about the fraud – did not intend actual injury to the plaintiff. If Mr. Schmit knew about the falsification of records and the misrepresentations to the MHSA, and the plaintiffs are able to prove their fraud claims – which require intent – the plaintiffs have satisfied the intentional act exception, even though Mr. Schmit's intent was not to injure the plaintiff.

In reaching this conclusion, this Court distinguishes the case of *Delahoussaye v. Morton Int'l, Inc.*, 300 Fed. Appx. 257 (5th Cir. 2008), a case cited by both the magistrate judge and defendants in support of the denial of remand.[6] In *Morton*, the Fifth Circuit affirmed the trial court's dismissal of all claims against Morton arising out of a petition in which plaintiffs alleged certain intentional acts against Morton. Specifically the court noted:

> The crux of plaintiffs' appeal is whether the complaint adequately set forth the intentional act exception to workers' compensation exclusivity. *See* La.Rev.Stat. 23:1032(A)(1) & (B). The plaintiffs contend that the complaint set forth such a claim because they alleged that Morton's procedures for handling misfires were contrary to

---

[6] This Court notes the *Delahoussaye* decision is not a reported opinion and, therefore, is of no precedential value pursuant to Rules 47.5.3 and 47.5.4 of the Fifth Circuit.

> safety regulations and that Morton knew the procedures were substantially certain to result in injury. The intentional act exception is narrowly construed, *Reeves v. Structural Pres. Sys.*, 731 So.2d 208, 211 (La.1999), and Louisiana courts have recognized that "mere knowledge and appreciation of a risk does not constitute intent; reckless or wanton conduct, gross negligence, disregard of safety regulation or the failure to use safety equipment by an employer does not constitute intentional wrongdoing." *Micele v. CPC of La., Inc.*, 709 So.2d 1065, 1068 (La.Ct.App.1998). The complaint here included allegations that the explosion occurred in a manner not contemplated by Morton, that the defendant presumed that misfires were inert and could not be exploded except by planned detonation or the equivalent of a hammer blow, and that Morton knew its procedures would result in the "likelihood" of a misfire detonation and a subsequent injury "at some point" or "eventually." There were no allegations that the defendant had ever been cited for safety violations or that other workers had previously been injured. The plaintiffs' complaint sets out an appreciation of a risk of injury and at most alleges gross negligence. Thus, the district court did not err. *See, e.g., Reeves*, 731 So.2d at 212 ("[G]ross negligence does not meet the intentional act requirement.").

*DelaHoussaye*, 300 Fed. Appx. at 258.

What distinguishes the instant case from the *Delahoussaye* case is that – at least as far as this Court can determine – the complaint in *Delahoussaye* does not allege fraud on the part of Morton. Indeed, the *Delahoussaye* complaint alleged only that Morton's procedures for handling misfires were contrary to safety regulations and Morton knew the procedures were substantially certain to result in injury. In the instant case, in addition to similar allegations, the plaintiffs are alleging fraud on the part of the company and two of its employees, which, if proved, necessarily requires intent on the part of the defendants to cause a "loss" to another.

Considering the foregoing, this Court concludes, construing all disputed evidence in favor of the plaintiffs, this Court cannot say the defendants have shown there is *no reasonable basis* for a district court to predict the plaintiffs might be able to recover against Mr. Schmit in this case. Under these circumstances, joinder of Mr. Schmit as a party defendant was not improper. Therefore, this Court declines to accept the recommendation of the magistrate judge, finding defendant Daniel

Schmit was not improperly joined. Because Mr. Schmit's presence in the instant lawsuit defeats complete diversity, this Court lacks subject matter jurisdiction over the instant case, and the Motion to Remand is, therefore, GRANTED. The Clerk of Court shall remand the instant lawsuit to the 16th Judicial District Court for the Parish of Iberia, Louisiana.

As this Court lacks subject matter jurisdiction over the instant case, this Court declines to rule on plaintiffs' Motion for Leave to File an Amended Complaint [Doc. 30].

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this __23__ day of June, 2011.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

COPY SENT
DATE 6/24/11
BY: /pjd/
TO: RFD
cb